

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x

JASON RIVERA,

                                 Plaintiff,

                -against-

CITY OF NEW YORK, POLICE OFFICER JOHN DOE,
POLICE OFFICER JANE DOE

                                Defendants.

COMPLAINT AND
JURY DEMAND

Docket No.

ECF CASE

-------------------------------------------------------------------- x

Plaintiff Jason Rivera by his attorney Martha Kashickey, of Stoll, Glickman & Bellina, LLP, for his complaint against defendants City of New York and New York Police Department officers, alleges as follows:

### PRELIMINARY STATEMENT

1. This is a civil rights action in which plaintiff seeks relief through 42 U.S.C. §1983 and 42 U.S. §1988 for the violation of his civil rights protected by the Fourth and Fourteenth Amendments, in addition to violations of the laws and Constitution of the State of New York.

2. The claim arises from an October 13, 2013 incident in which defendants, acting under color of state law, falsely arrested and maliciously prosecuted Mr. Rivera.

3. Plaintiff seeks monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

### JURISDICTION

4. This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §1983 and §1988 and the laws and Constitution of the State of New York.

5. The jurisdiction of this court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of pendent jurisdiction.

## VENUE

6. Venue is laid within the Southern District of New York in that Defendant City of New York is located within and a substantial part of the events giving rise to the claim occurred within the boundaries of the Southern District.

## PARTIES

7. Plaintiff resided at all times here relevant in Bronx County County, City and State of New York.

8. The City of New York (or "the City") is a municipal corporation organized under the laws of the State of New York. At all times relevant hereto, Defendant City, acting through the New York Police Department (or "NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

9. Police Officers "John Doe" and "Jane Doe" were, at all times here relevant, police officers of the NYPD, and as such was acting in the capacity of agents, servants and employees of the City of New York. On information and belief, at all times relevant

hereto, Defendants Doe were involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his/her fellow officers when s/he observed them arresting plaintiff without probable cause. Defendants Doe are sued in their individual capacities.

10. At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## NOTICE OF CLAIM

11. Within 90 days of the events giving rise to these claims, plaintiff filed written notices of claim with the New York City Office of the Comptroller. Over 30 days have elapsed since the filing of those notices, and this matter has not been settled or otherwise disposed of.

## FACTUAL CHARGES

12. On October 13, 2013, at East 180th Street and Monterey Avenue in the Bronx, at approximately 10pm, plaintiff was walking to a car with a friend. They were about to head to Ruth's Chris steakhouse to celebrate plaintiff's 30th birthday. Seventeen friends were meeting plaintiff there, two of whom had flown in from other states for the occasion.

13. Plaintiff was carrying a black plastic bag containing a closed bottle of vodka and a closed can of Red Bull, which he had just bought.

14. Two police officers, a male officer who appeared to be Caucasian and a female officer who appeared to be Hispanic, approached plaintiff and his friend, who are both Hispanic. They searched the bag and the male officer demanded to know what plaintiff

and his friend were doing for the evening.

15. Plaintiff answered him truthfully.

16. The male officer demanded identification from plaintiff and his friend, and told them they would not be going to Ruth's Chris tonight.

17. Plaintiff produced his identification and asked why they were being stopped.

18. The male officer replied that it looked as though plaintiff and his friend were about to get into trouble.

19. Plaintiff, offended, asked the officer, "Why do we look like we're getting into trouble? Is it because we are Spanish?" Plaintiff's friend stated that he was a registered nurse.

20. The female officer then admonished them not to bring up race.

21. Plaintiff was detained for approximately 30 minutes while the officers checked for warrants.

22. The male officer told plaintiff he had a warrant, and arrested him.

23. Plaintiff was held in a cell, searched, and his shoelaces and the string from his sweatshirt were taken.

24. Plaintiff was incarcerated at the precinct for approximately four hours. Finally, an officer told him he could leave. Plaintiff was never taken before a judge to answer to any warrant.

25. Plaintiff was given a summons for "open container." The officer who swore to the summons complaint lied and stated that the vodka plaintiff was carrying was open.

26. Plaintiff returned to court twice to fight the charges, and the case was dismissed.

27. At all times during the events described above, the defendant police officers

were engaged in a joint venture and formed an agreement to violate plaintiff's rights. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events. They failed to intervene in the obviously illegal actions of their fellow officers against plaintiff.

28. During all of the events above described, defendants acted maliciously and with intent to injure plaintiff.

## DAMAGES

29. As a direct and proximate result of the acts of defendants, plaintiff suffered the following injuries and damages:

 a. Violation of his rights pursuant to the Fourth Amendment of the United States Constitution to be free from an unreasonable search and seizure of their persons;

 b. Violation of his rights pursuant to the Fourteenth Amendment of the United States Constitution to due process;

 c. Violation of his New York State Constitutional rights under Article 1, Section 12 to be free from an unreasonable search and seizure;

 d. Violation of his New York State Constitutional rights under Article 1, Section 6 to due process;

 e. Physical pain and suffering;

 f. Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety;

 g. Loss of liberty.

FIRST CAUSE OF ACTION
Defendants Falsely Arrested and Falsely Imprisoned
Plaintiff Under 42 U.S.C. § 1983

30. The above paragraphs are here incorporated by reference.

31. The officer defendants wrongfully and illegally arrested, detained and imprisoned plaintiff without reasonable suspicion or probable cause and without a warrant.

32. At all relevant times, defendants acted forcibly in apprehending, arresting, and imprisoning plaintiff and without plaintiff's consent.

33. All of this occurred without any illegal conduct by plaintiff.

34. The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiff of his constitutional rights secured by the United States Constitution.

35. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

SECOND CAUSE OF ACTION
New York State Constitution Article I §12
False Arrest and False Imprisonment
(Against All Defendants)

36. The above paragraphs are here incorporated by reference.

37. The officer defendants wrongfully and illegally arrested, detained and imprisoned plaintiff without reasonable suspicion or probable cause and without a warrant.

38. At all relevant times, defendants acted forcibly in apprehending, arresting, and imprisoning plaintiff and without plaintiff's consent.

39. All of this occurred without any illegal conduct by plaintiff.

40. Defendants, their officers, agents, servants and employees, were responsible for plaintiff's arrest, detention and imprisonment during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

41. Defendants acted with a knowing, willful, wanton, grossly reckless, unlawful, unreasonable, unconscionable, and flagrant disregard of plaintiff's rights, privileges, welfare, and well-being and are guilty of egregious and gross misconduct towards plaintiff.

42. The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiff of his constitutional rights secured by the Constitution of the State of New York.

43. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

### THIRD CAUSE OF ACTION
False Arrest and False Imprisonment
(Against All Defendants)

44. The above paragraphs are here incorporated by reference.

45. Defendants subjected plaintiff to false arrest, false imprisonment, and

deprivation of liberty without probable cause.

46. Defendants intended to confine plaintiff, plaintiff was conscious of his confinement and did not consent to his confinement.

47. Defendants, their officers, agents, servants and employees, were responsible for plaintiff's arrest, detention and imprisonment during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

48. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

## SIXTH CAUSE OF ACTION
### Assault and Battery
### (Against All Defendants)

49. The above paragraphs are here incorporated by reference.

50. By approaching, intimidating, questioning, and forcibly grabbing and handcuffing plaintiff, defendants made plaintiff fear for his physical well-being and safety and placed him in apprehension of immediate harmful and/or offensive touching.

51. Defendants engaged in and subjected plaintiff to immediate harmful and/or offensive touching and battered him without his consent.

52. Defendants, their officers, agents, servants and employees, were responsible for plaintiff's arrest, detention and imprisonment during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

53. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

## SEVENTH CAUSE OF ACTION
## MUNICIPAL AND SUPERVISORY LIABILITY
### (Against Defendant City)

54. The above paragraphs are here incorporated by reference.

**THE CITY OF NEW YORK AND NYPD FAIL TO SCRUTINIZE OFFICERS, UNITS AND PRECINCTS WITH HISTORIES OF MULTIPLE LAWSUITS FOR CIVIL RIGHTS VIOLATIONS**

55. The City's continuing failure to deter police misconduct has led to ever increasing numbers of lawsuits for repeat routine misconduct by the same officers, same units and same precincts.

56. The number of claims against the department doubled over the past decade to a record high of 9,570 filed in 2012. The suits cost taxpayers more than $1 billion dollars during that time period.[1]

57. In 2010, New York City paid out $136 million[2] for the fiscal year, compared to 2009, when it paid out more than $117 million, and 2008, when it paid $80 million.[3] In the past ten years, the City of New York has paid nearly a billion dollars on lawsuits

---

[1] New York Daily News, EXCLUSIVE: Detective is NYPD's most-sued cop, with 28 lawsuits filed against him since 2006 (SEE INTERACTIVE GRAPHIC), February 18, 2014, http://www.nydailynews.com/new-york/lawsuits-nypd-double-decade-costing-taxpayers-1b-article-1.1615919#ixzz2ttdX4ZkE.

2 Bob Hennelly's WNYC report, "Amid City Budget Crisis, New Scrutiny on Millions in NYPD Settlements" from June 8, 2011: http://www.wnyc.org/articles/its-free-country/2011/jun/08/amid-city-budget-grappling-new-scrutiny-millions-nypd-settlements/ and June 13, 2011, "With Budget Deadline Looming, City Lawsuits Come Under Scrutiny": http://www.wnyc.org/articles/wnyc-news/2011/jun/13/budget-deadline-looming-city-lawsuits-come-under-scrutiny/, last visited on July 7, 2011

[3] Mayor Michael Bloomberg's preliminary Management Report for FY 2009, available at http://www.nyc.gov/html/ops/downloads/pdf/_mmr/nypd.pdf, see page 115, last visited on February 18, 2010.

brought against the NYPD.[4] More than 40% of those settlements in 2011 stem from excessive force and false arrest.

58. The widely held assumption is that civil rights lawsuits deter police misconduct. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. Wyatt v. Cole, 504 U.S. 158, 161, (1992) citing Carey v. Piphus, 435 U.S. 247, 254-257, (1978). "As far as we know, civil liability is an effective deterrent [to civil rights violations], as we have assumed it is in other contexts." See Hudson v. Michigan 547 U.S. 586, 598 (2006) citing Correctional Services Corp. v. Malesko, 534 U.S. 61, 70 (2001) and Nix v. Williams, 467 U.S. 431, 446, (1984). "It is almost axiomatic that the threat of damages has a deterrent effect (citation omitted) surely particularly so when the individual official faces personal financial liability." Carlson v. Green, 446 U.S. 14, 21, (1980), citing Imbler v. Pachtman, 424 U.S. 409, 442, and footnote 6 (1976).

59. However, the City of New York has isolated NYPD officers from accountability for its civil rights lawsuits by indemnifying officers who violate the constitutional rights of citizens, and, as a result, is preventing civil rights lawsuits from having any deterrent value to the City, the NYPD or its officers.

60. Former Comptroller John Liu described the City of New York having a "see no evil, hear no evil' attitude," "whose repeated calls for analyzing lawsuits were ignored". See FN1, above.

---

[4] "NYPD Has Paid Out Nearly $1 Billion in Claims Over Past Decade," by Associated Press Writers Colleen Long and Jennifer Peltz, http://www.law.com/jsp/article.jsp?id=1202473432953 , October 15, 2010 last available on December 9, 2010.

61. Civil rights lawsuits against police officers have no impact on the officers' careers, regardless of the expense to the City of the officers' lawsuit liability, even after multiple lawsuits. In 1999, former Comptroller Alan Hevesi reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers. This "total disconnect" between officers' liability and NYPD discipline, results in a system where the City pays vast sums to settle false arrests, but the NYPD does nothing to investigate nor address the underlying causes of such false arrests or officers who have incurred large sums of civil rights liability.

62. The City Council, Government Operations Committee, despite being alerted at a City Council hearing on December 12, 2009, and on other occasions, to the obvious problem of officers and precincts with a disproportionate responsibility for civil rights lawsuit liability, has failed to take action to hold officers or precincts accountable. It has likewise failed to hold an investigative hearing into what extent specific officers, units and precincts are disproportionately responsible for New York City civil rights lawsuits.

63. In 2009, New York City has seen a 46 percent jump in payouts to settle claims against the NYPD and has paid out more than $117 million in fiscal year 2009, compared to $80 million in 2008.[5] In the past ten years, the City of New York has paid nearly a billion dollars on lawsuits brought against the NYPD.[6]

64. Nevertheless, the City has repeatedly resisted attempts to catalog even basic information gleaned from civil rights lawsuits that could improve training, leadership,

---

[5] Mayor Michael Bloomberg's preliminary Management Report for FY 2009, available at http://www.nyc.gov/html/ops/downloads/pdf/_mmr/nypd.pdf, see page 115, last visited on February 18, 2010.

[6] "NYPD Has Paid Out Nearly $1 Billion in Claims Over Past Decade," by Associated Press Writers Colleen Long and Jennifer Peltz, http://www.law.com/jsp/article.jsp?id=1202473432953 , October 15, 2010 last available on December 9, 2010.

supervision, and discipline in the NYPD. The City's deliberate indifference towards the contents of civil rights litigation, towards individual officers repeatedly named in lawsuits, towards incidents repeatedly occurring in the same precinct, towards patterns of misconduct that arise in civil rights litigation has caused the constitutional violations against plaintiff.

65. All of the aforementioned has created a climate where police officers and detectives lie to prosecutors and in police paperwork and charging instruments, and testify falsely, with no fear of reprisal. "Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration-through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department-there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged." See *Colon v. City of New York, et al*, 2009 WL 4263362 (E.D.N.Y.)(Weinstein, J.).

66. In August 2013, Judge Shira Scheindlin found the City of New York and New York Police Department deliberately indifferent to overwhelming institutional evidence of unconstitutional stops and indirect racial profiling in *Floyd, et al, v. City of New York, et al*, 08-CV-01034 (*see* Docket No. 373, Decision, page 60, section "C"). In her 198-page decision, Judge Scheindlin outlined how the NYPD was on notice, but deliberately

ignored evidence that police officers were systematically under pressure to be productive, violating New Yorkers' rights to be free from unreasonable searches. Judge Scheindlin also found that the City of New York was on notice that New Yorkers of color were disproportionately violated by the NYPD's unreasonable searches and that the policy was unconstitutionally discriminatory based on race.

67. This failure and these policies caused the officers in the present case to violate plaintiffs' civil rights, without fear of reprisal.

68. Plaintiff has been damaged as a result of the deliberate indifference of the Defendant City.

WHEREFORE, plaintiff demands judgment against the defendants, jointly and severally, as follows:

A. In favor of plaintiff in an amount to be determined by a jury for each of plaintiff's causes of action;

B. Awarding plaintiff punitive damages in an amount to be determined by a jury;

C. Awarding plaintiff reasonable attorneys' fees, costs and disbursements of this action; and

D. Granting such other and further relief as this Court deems just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury.

DATED:   January 9, 2015
         Brooklyn, New York

TO:

    City of New York
    100 Church Street
    New York, NY 10007

Respectfully yours,

By: Martha Kashickey
Bar# MK6031
Stoll, Glickman & Bellina, LLP
Attorneys for Plaintiff
475 Atlantic Avenue, 3rd Floor
Brooklyn, NY 11217
T: (718) 852-3710
F: (718) 852-3586
mkashickey@stollglickman.com